UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
EASTON LLC, doing business in New York as
SHILLELAGH HOLDINGS LLC,

<table>
<tr><td>Plaintiff,</td><td>MEMORANDUM<br>OPINION AND ORDER</td></tr>
<tr><td>-against-</td><td>CV 11-4791 (ETB)</td></tr>
</table>

INC. VILLAGE OF MUTTONTOWN,

                                    Defendant.
-------------------------------------------------------------------------X

Before the court are the following cross-motions: (1) the plaintiff's motion for a preliminary injunction, enjoining the defendant from enforcing a moratorium that it has enacted and requiring it to immediately consider plaintiff's application to subdivide its property; and (2) the defendant's motion to dismiss the plaintiff's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that this action is not ripe for adjudication.  For the following reasons, defendant's motion to dismiss is granted and the plaintiff's motion for a preliminary injunction is denied as moot.


FACTS

Plaintiff, Easton LLC ("Easton"), is a family-held limited liability company that owns a 100-plus acre parcel of unsubdivided land (the "Property") in the defendant, the Incorporated Village of Muttontown's (the "Village"), three-acre residential zoning district.  (Am. Compl. ¶ 17.)  The family members who make up Easton no longer reside on the Property.  (Id. ¶ 16.)

-1-

Easton seeks to develop the Property into a large lot residential community composed of minimum three-acre residential lots under the Village's existing zoning regulations. (Id. ¶ 10.) However, due to several moratoria put in place by the Village, Easton has been prevented from submitting its subdivision application to the Village for review and approval. (Id.)

According to the allegations in the Amended Complaint, in March 2010, it became publicly known that the 107-acre Woodcrest County Club ("Woodcrest") would be sold at a bankruptcy auction in May 2010. (Id. ¶ 29.) The Village sought to acquire Woodcrest at the bankruptcy auction. (Id. ¶ 30.) On or about March 10, 2010, at a public meeting of the Village's Board of Trustees (the "Trustees"), the Village Attorney publicly announced that the Village should immediately adopt an emergency hold on subdivision approvals so that it could review its "40 year old master plan." (Id. ¶ 31.) The Village Attorney cited the Woodcrest bankruptcy auction as the principal reason for the review of the master plan and the moratorium on subdivision approvals. (Id.) At this same meeting, the Village Trustees voted to authorize the Village Attorney to draft a local law that would impose the moratorium. (Id. ¶ 32.)

On or about April 13, 2010, at a subsequent meeting of the Village's Trustees, the Village Attorney urged that a public hearing on the proposed moratorium law be scheduled for April 29, 2010. (Id. ¶ 33.) The Woodcrest bankruptcy auction was scheduled to occur on May 6, 2010. (Id.) The Village publicly announced its intention to study its master plan at this time, which it claimed had not been reviewed or updated since 1969. (Id. ¶ 36.) Plaintiff alleges that this statement was in fact not true and that the Village had reviewed its master plan completely in 1989. (Id. ¶ 37 and Ex. E, annexed to original Complaint.) Plaintiff further alleges that the 1989 master plan and zoning regulations were themselves reviewed as recently as 2003 when the

-2-

Village adopted Local Law 4 of 2003, previously imposing another subdivision moratorium for the purpose of reviewing the master plan.  (Id. ¶ 38.)

According to the Amended Complaint, the adoption of a subdivision moratorium in 2010 and "the spectre of a review of a municipality's master plan and zoning have the obvious and predictable impact of significantly lowering the value of subdividable land, such as Woodcrest and [the Easton] [P]roperty."  (Id. ¶ 40.)  The devaluing occurs because potential purchasers are in doubt as to how such property might be zoned when the moratorium is lifted.  (Id.)  This uncertainty "equates to a diminution of the value of the property."  (Id.)

On or about May 6, 2010, the bankruptcy auction of Woodcrest took place.[1]  (Id. ¶ 43.) On or about May 12, 2010, the Village adopted Local Law 1 of 2010, imposing the subdivision moratorium announced in March 2010.  (Id. ¶ 44.)  The moratorium was divided into four phases as follows: an initial six-month period and three possible three-month extensions, for a total of fifteen months.  (Id. ¶ 49.)  The extensions could be imposed, if needed, by a resolution of the Village's Trustees.  (Id.)  Each of the three extensions were adopted by the Village without any explanation other than that more time was necessary.  (Id.)  According to plaintiff, the Village took no steps to address the concerns alleged for the adoption of the moratorium during its entire fifteen-month term.  (Id. ¶¶ 50-53.)

On July 27, 2011, the Village adopted another local law - Local Law 2 of 2011 - imposing a second moratorium, identical to the first one adopted in May 2010 and including the

---

[1]  Although not stated in the Amended Complaint, it appears to be undisputed that the Village participated in the bankruptcy auction as part of an environmental and municipal coalition, which was ultimately unsuccessful in acquiring Woodcrest, and the property was purchased by another bidder for substantially more than the coalition was able to raise. (Leventhal Decl. ¶ 25.)

-3-

same term of fifteen months.  (Id. ¶ 55.)  According to plaintiff, the Village scheduled the public hearing on the second proposed moratorium for a Wednesday morning at 11:30 a.m., when many people could not attend, as opposed to its customary practice of holding public hearings in the evenings at 7:30 p.m.  (Id. ¶ 56.)  The record from the public hearing demonstrates that not one resident attended the July 27, 2011 hearing.  (Id.)

Easton commenced the within action on October 3, 2011 and amended its Complaint on December 18, 2011.  The Amended Complaint is for a declaratory judgment to redress the alleged violations of Easton's Fifth and Fourteenth Amendment rights.  Plaintiff alleges that the reasons given by the Village for the moratoria are "patently false, irrelevant and fraudulent" and that the Village has done nothing during the course of the two back-to-back moratoria to address the problems alleged by the Village as reasons for their imposition.  (Id. ¶¶ 11-12.)  The Amended Complaint alleges that the two moratoria, both on their face and as applied, violate Easton's due process and equal protection rights under the Fifth and Fourteenth Amendments because: (1) the only reason to impose the moratoria was to devalue private property so that the Village could acquire Woodcrest as a lower price at the bankruptcy auction; (2) the moratoria constitute a deprivation of property and liberty without due process of law; (3) the moratoria constitute a deprivation of equal protection, as well as unlawful discrimination, because they affect only a handful of the more than 1,000 landowners in the Village; (4) the moratoria constitute an invalid exercise of police power by the Village; and (5) the moratoria constitute a taking of property without just compensation.  (Id. ¶ 62.)

Easton requests a preliminary and permanent injunction prohibiting the Village from enforcing its second moratorium and mandating that Easton be permitted to immediately submit

for review its subdivision plan.  (Id. ¶ 63.)  Easton further seeks a declaratory judgment that

Local Law 1 of 2010 and Local Law 2 of 2011 are invalid and constitute takings in violation of

the Fifth Amendment and that just compensation be awarded to Easton from the effective date of

Local Law 1 of 2010 to the date of the entry of judgment herein.  (Id.)  Finally, Easton seeks its

attorney's fees and costs incurred in bringing this action.

DISCUSSION

I.    Legal Standard

A district court should dismiss a case for lack of subject matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1) when the court "lacks the statutory or constitutional power to

adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed. R.

Civ. P. 12(b)(1).  When reviewing a motion to dismiss for lack of jurisdiction, the Court "must

accept as true all material factual allegations in the complaint, but [it is] not to draw inferences

from the complaint favorable to Plaintiff[]."  Wood v. GMC, No. CV 08-5224, 2010 U.S. Dist.

LEXIS 96157, at *9 (E.D.N.Y. Aug. 23, 2010) (quoting J.S. ex rel. N.S. v. Attica Cent. Schs.,

386 F.3d 107, 110 (2d Cir. 2004)) (additional citation omitted) (alteration in original).  The Court

may also "consider evidence outside the pleadings, such as affidavits" when determining whether

it has jurisdiction.  Stoothoff v. Apfel, No. 98 Civ. 5724, 1999 U.S. Dist. LEXIS 10459, at *1 n.1

(S.D.N.Y. July 7, 1999) (citing cases).  "The plaintiff bears the burden of proving subject matter

jurisdiction by a preponderance of the evidence."  Wood, 2010 U.S. Dist. LEXIS 96157, at *9

(quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

Similarly, "[t]o survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must

-5-

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  As a general rule, the court is required to accept as true all of the allegations contained in the complaint.  See Iqbal, 129 S. Ct. at 1949; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).


II.     The Amended Complaint

As a threshold matter, the Village asserts that the Amended Complaint is invalid because it was filed without leave of Court and after the time for amendment as of right expired.  (Def. Mem. of Law 1.)  Easton commenced this action on October 3, 2011.  Pursuant to Federal Rule of Civil Procedure 15, Easton had twenty-one days after serving its Complaint to amend as of right or twenty-one days after service of a responsive pleading or a motion pursuant to Rule 12(b), (e) or (f), whichever is earlier.  See Fed. R. Civ. P. 15(a)(1).

By letter dated October 24, 2011, the Village sought leave from Judge Wexler - the assigned district judge at that time - to move to dismiss plaintiff's Complaint pursuant to Rule 12(b)(1) on the grounds of ripeness.  Pursuant to Judge Wexler's individual rules, "[s]ervice of [a pre-motion conference] letter by the moving party within the time requirements of Rule 12 of the Federal Rules of Civil Procedure shall constitute timely service of a motion made pursuant to Federal Rule of Civil Procedure 12(b)."  Individual Mot. Practices of Wexler, J. at 2(B).

Accordingly, the Village's pre-motion conference letter of October 24, 2011 cut off Easton's right to amend its Complaint as of right.

Notwithstanding that it no longer possessed the right to amend its Complaint, Easton filed an Amended Complaint on December 18, 2011, without seeking permission from the Court prior to doing so.  In response to the Village's argument that the Amended Complaint should be deemed invalid because it was filed without leave of Court, Easton asserts that since its Amended Complaint "came substantially before Defendant's Cross Motion to Dismiss, the amendment to the complaint did not prejudice Defendant."  (Pl. Reply Mem. of Law 27.)  According to Easton, "[i]f, indeed, Defendant's letter to the Judge triggered the 21 day period, it was only because the Judge adopted a rule intended to extend the time to make certain motions.  There is no policy reason, or reason of fairness, that this Court should not allow the amendment nunc pro tunc if it was, indeed, not an amendment as of right."  (Id. 28.)

In the absence of any showing of prejudice and in the interest of judicial economy - both sides having addressed the Amended Complaint in their motion papers - the Court will recognize the plaintiff's Amended Complaint, despite the irregularities noted above.  See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); see also Mest v. USDA FSIS, No. 08-CV-00416A(F), 2010 U.S. Dist. LEXIS 39900, at *7 (W.D.N.Y. Mar. 30, 2010) (accepting plaintiff's amended complaint where plaintiff failed to seek leave of court prior to filing and defendant had already filed a motion to dismiss); Rosner v. Bank of China, No., 2008 U.S. Dist. LEXIS 105984, at *46-47 (S.D.N.Y. Dec. 18, 2008) (disapproving of plaintiff's "approach of filing first and seeking permission later" but accepting amended complaint nonetheless, noting that "leave to amend is generally granted freely").

III.    Ripeness

The Village asserts that this action should be dismissed because under the Supreme

Court's holding in Williamson County Regional Planning Commission v. Hamilton Bank, 473

U.S. 172 (1985), and its progeny, the case is not ripe for adjudication.  Since ripeness is a

"jurisdictional inquiry," Murphy v. New Milford Zoning Commission, 402 F.3d 342, 347 (2d

Cir. 2005) (quoting Vandor, Inc. v. Militello, 301 F.3d 37, 38 (2d Cir. 2002) (per curiam)), the

Court "must presume that [it] cannot entertain [plaintiff's] claims 'unless the contrary appears

affirmatively from the record.'"  Murphy, 301 F.3d at 347 (quoting Renne v. Geary, 501 U.S.

312, 316 (1991)).  The plaintiff in a zoning dispute bears a "high burden" of proving jurisdiction.

Murphy, 301 F.3d at 347 (citations omitted).

In determining whether a case is ripe for review, the Court "is generally require[d] . . . 'to

evaluate both the fitness of the issues for judicial decision and the hardship to the parties of

withholding court consideration.'"  Id. at 347 (quoting Abbott Labs. v. Gardner, 387 U.S. 136,

149 (1967)).  "Building on the foregoing, the Supreme Court has developed specific ripeness

requirements applicable to land use disputes."  Murphy, 402 F.3d at 347.

In Williamson County, the Supreme Court considered whether the application of certain

zoning laws amounted to a taking in violation of the Fifth Amendment.  See Williamson County,

473 U.S. at 175.  In rendering its decision, the Supreme Court developed a two-prong test that a

plaintiff is required to satisfy in order to demonstrate ripeness in the land use context.  First, the

plaintiff must show that prior to commencing its action, it "obtaine[d] a final, definitive position

as to how it could use the property from the entity charged with implementing the zoning

regulations."  Murphy, 402 F.3d at 348 (citing Williamson County, 473 U.S. at 186).  "Second,

-8-

the plaintiff must demonstrate that it sought 'compensation for an alleged taking before proceeding to federal court.'" Roman Catholic Diocese of Rockville Centre v. Inc. Vill. of Old Westbury, 09 CV 5195, 2011 U.S. Dist. LEXIS 14268, at *50 (E.D.N.Y. Feb. 14, 2011) (quoting Murphy, 402 F.3d at 348) (additional citation omitted). While the ripeness requirement of Williamson County was announced in the takings context, the Second Circuit has extended the first prong of the inquiry to "equal protection and due process claims asserted in the context of land use challenges," such as the ones asserted herein by Easton.[2] Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (collecting cases).

A.  Final Decision Requirement

"A 'final decision' is a 'definitive position on the issue that inflicts an actual, concrete injury.'" Roman Catholic Diocese, 2011 U.S. Dist. LEXIS 14268, at *53 (quoting Country View Estates @ Ridge, LLC v. Town of Brookhaven, 452 F. Supp. 2d 142, 149 (E.D.N.Y. 2006)). "The rationale behind the finality requirement is that a court cannot demonstrate whether a [p]laintiff has been deprived of property arbitrarily or otherwise, until it has a final definitive position before it on how the administrative agency will apply the regulation at issue to the particular land in question." Roman Catholic Diocese, 2011 U.S. Dist. LEXIS 14268, at *53 (quoting R-Goshen LLC v. Vill. of Goshen, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003)).

In the land use development context, a final decision requires that a development plan be

---

[2]  The second part of the Williamson County test, which requires plaintiff to seek compensation for any alleged taking before proceeding to federal court, "'is germane to takings challenges' only and does not apply to due process[] [or] equal protection[] . . . claims." Roman Catholic Diocese, 2011 U.S. Dist. LEXIS 14628, at *50 n.24 (quoting Murphy, 402 F.3d at 349).

-9-

"submitted, considered and rejected by the governmental entity with the power to implement zoning regulations." S&R Dev. Estates, LLC v. Bass, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) (citing Goldfine v. Kelly, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000)); see also Osborne v. Fernandez, No. 06-CV-4127, 2009 U.S. Dist. LEXIS 24709, at *18 (S.D.N.Y. Mar. 30, 2009), aff'd, 414 Fed. Appx. 350 (2d Cir. 2011) (same). "Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property." Osborne, 2009 U.S. Dist. LEXIS 27409, at *18 (quoting Country View Estates, 452 F. Supp. 2d at 149).

In a similar action, Osborne v. Fernandez, No. 06-CV-4127, 2009 U.S. Dist. LEXIS 24709, at *1 (S.D.N.Y. Mar. 30, 2009), the plaintiffs owned 132 acres of land in the Town of Stanford, New York, that they sought to subdivide into separate plats of land. See id. at *3. Plaintiffs filed their subdivision application with the Town of Stanford Planning Board but, after several years, never received final approval for their proposed subdivision. See id. As a result, plaintiffs commenced a federal action, alleging that defendants acted in bad faith to maliciously, intentionally and deliberately deny plaintiffs' subdivision application, thereby violating inter alia plaintiffs equal protection and due process rights. See id. at *3-4.

In granting summary judgment to defendants, the court in Osborne held that plaintiffs had not received a final decision on their subdivision application and that, as a result, their claims were not ripe for adjudication. See id. at *4. "Without a final decision from the Planning Board on Plaintiffs' application, 'the Court's assessment of plaintiff's injury caused by defendants' alleged constitutional violations is speculative for Article III purposes.'" Id. at *19 (quoting Country View Estates, 452 F. Supp. 2d at 150). The court went on to state that "[t]he types of

-10-

injuries claimed by Plaintiffs - delay and bad faith in the processing of their application and loss of desired use of their property - are precisely the types of claimed injuries that require a final decision to become potentially cognizable."  Osborne, 2009 U.S. Dist. LEXIS 27409, at *19 (citing Lost Trail LLC v. Town of Weston, 289 Fed. Appx. 443, 445 (2d Cir. 2008)) (additional citation omitted).  In affirming the district court's decision, the Second Circuit explicitly stated that "the District Court was correct to hold that the Osbornes' due-process claims are not ripe for review because the Osbornes have not yet received a final decision on their subdivision application.  Osborne v. Fernandez, 414 Fed. Appx. 350, 351 (2d Cir. 2011) (citing Williamson County, 473 U.S. at 186-87).

In the within action, the Village asserts - and Easton does not dispute - that there is no final decision on Easton's application to subdivide the Property, thus making this action premature.[3]  Rather, as a result of the moratoria imposed by the Village, Easton has never even filed its subdivision application with the Village.[4]  While the moratorium contains a hardship

---

[3]  In its memorandum of law in opposition to the Village's motion to dismiss, Easton fails to even address the ripeness issue, arguing instead that this action is "first and foremost a facial invalidity case," which does not require any determination of ripeness.  (Pl. Mem. of Law in Opp'n 6.)  However, while the Amended Complaint does indeed contain a claim asserting that the local laws enacting the moratoria are unconstitutional on their face, it also clearly asserts a claim that the local laws, as applied to Easton, are unconstitutional, which requires a showing of ripeness.

[4]  While these cross-motions were sub judice, the Village Trustees adopted a resolution at a public meeting held on April 10, 2012, terminating the moratorium giving rise to this action, effective immediately.  (Letter from Leventhal, S. dated Apr. 11, 2012 at 2.)  Accordingly, there is no longer any impediment to Easton submitting its subdivision application to the Village and it is the Court's understanding, based on representations by the Village Attorney at the oral argument held on April 23, 2012, that the plaintiff is now free to pursue its pending application and that the Village recognizes the $48,000.00 previously posted for such purpose by the plaintiff prior to the enactment of the moratorium.

exception, whereby Easton could apply for an exemption from the moratorium, Easton failed to take advantage of this option, asserting that the Village unlawfully demanded a $25,000 "hearing charge" as a pre-condition to even scheduling the hearing.[5]  (Am. Compl. ¶58(g).)

The hardship exemption herein is akin to a variance.  See Murphy, 402 F.3d at 353 (stating that plaintiffs "may have been able to obtain a variance from the Zoning Board of Appeals by showing that a literal enforcement of the zoning requirements would work an unusual hardship").  As the Second Circuit has stated, "failure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe."  Murphy, 402 F.3d at 353 (citing Williamson County, 473 U.S. at 190).  The rationale is that "through the variance process local zoning authorities function as 'flexible institutions; what they take with the one hand they may give back with the other.'"  Murphy, 402 F.3d at 353 (quoting MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 350 (1986)).  "Not pursuing a variance thus leaves undetermined the permitted use of the property in question."  Murphy, 402 F.3d at 353 (citing Williamson County, 473 U.S. at 193, 200).  Like the plaintiffs in Murphy v. New Milford Zoning Commission, 402 F.3d 342 (2d Cir. 2005), Easton "failed to submit a single variance application in this matter." Id. at 353.  "This failure . . . deprives [the Court] of any certainty as to what use of the [Property] would be permitted.  Hence, [Easton's] claims are not ripe."  Id. (citation omitted); see also S&R Dev. Estates, 588 F. Supp. 2d at 461-63 (finding that plaintiff's claims were not ripe because they failed to seek a variance and therefore, defendant had not yet issued a final decision).

---

[5]  The Village later reduced the "hearing charge" to $15,000.  Although Easton asserts that it did request a hardship hearing and that the Village failed to schedule one, it is undisputed that Easton failed to remit the required "hearing charge," which, as Easton notes, was a precondition to scheduling the hearing.

Based on the foregoing, Easton's due process and equal protection claims are not ripe for adjudication.

B.     Futility Exception

Courts within the Second Circuit have recognized a "futility exception" to the final decision requirement set forth in <u>Williamson County</u>, which is described as follows:

> While the ripeness doctrine does not require litigants to engage in futile gestures such as "to jump through a series of hoops, the last of which is certain to find obstructed by a brick wall, . . ." the presence of that brick wall must be all but certain for the futility exception to apply.  There must be evidence that the relevant government body has no discretion to grant an exemption, or that it "has dug in its heels and made clear that all such applications will be denied."

<u>Roman Catholic Diocese</u>, 2011 U.S. Dist. LEXIS 14268, at *52 (quoting <u>Country View Estates</u>, 452 F. Supp. 2d at 150) (additional citation omitted).  "It is clear, however, that 'mere allegations of open hostility [are] not sufficient to invoke the futility exception.'"  <u>Roman Catholic Diocese</u>, 2011 U.S. Dist. LEXIS 14268, at *52 (quoting <u>Homefront Org., Inc. v. Motz</u>, 570 F. Supp. 2d 398, 408 (E.D.N.Y. 2008)) (additional citation omitted) (alteration in original); <u>see also</u> <u>S&R Dev. Estates</u>, 588 F. Supp. 2d at 463 ("Futility does not exist merely because of hostility to the developer's plans.").

Although Easton does not specifically invoke the futility exception, it does state in its memorandum of law in opposition to the Village's motion to dismiss, that it "cannot even submit an application for subdivision approval to Defendant Village, much less obtain a final decision on it, because Defendant's moratorium law forbids it," thereby alluding to the futility exception. (Pl. Mem. of Law in Opp'n 8.)  While it does seem logical that it would be futile for Easton to attempt to receive a final decision from the Village regarding its subdivision application since it

-13-

is not allowed to submit such an application, the fact remains that Easton had an opportunity to apply for a variance from the moratorium through the hardship exemption and chose not to take advantage of it.  The Second Circuit has held that where a plaintiff fails to submit a single variance application, it "forecloses any contention that requiring Williamson County finality would be futile."  Murphy, 403 F.3d at 353 (citing Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1455 (9th Cir. 1987)); see also Ecogen, LLC v. Town of Italy, 438 F. Supp. 2d 149, 160-61 (W.D.N.Y. 2006) (rejecting plaintiff's claim that applying for a hardship exception would be futile where plaintiff only demonstrated that it was "doubtful" that defendant would grant the exception).

Easton also appears to imply that requiring a final determination by the Village here would be futile because the Village has engaged in bad faith in enacting the moratoria.  However, numerous other courts to consider this same argument have rejected it.  See, e.g., Osborne, 2009 U.S. Dist. LEXIS 27409, at *23 ("To the extent Plaintiffs intend, through their allegations of bad faith and delay, to argue that they are entitled to take advantage of the futility exception to the final decision requirement, that argument is likewise rejected."); Homefront Org., 570 F. Supp. 2d at 408 (finding that mere allegations of open hostility, bad faith, and malicious intent were insufficient to invoke futility exception); Goldfine, 80 F. Supp. 2d at 161 (finding that allegations of hostility, including misrepresentations regarding regulations to make development more difficult were "insufficient to show that the prospect of refusal is certain and to invoke the narrow futility exception"); Ecogen, 438 F. Supp. 2d at 161 ("[P]laintiff's allegations that defendants are hostile to the Italy Project do not suffice to establish futility.").

Finally, it is noted that during the pendency of these motions, the Village, on April 10,

-14-

2012, terminated the moratorium.  Thus, there is no longer an impediment to proceeding on the subdivision application that plaintiff seeks to pursue in the Village.  Accordingly, Easton is not entitled to invoke the futility exception to the final decision requirement.

      C.     <u>State Compensation Requirement</u>

      The second prong of the <u>Williamson County</u> analysis requires a plaintiff to demonstrate that it sought compensation from the relevant state authorities for an alleged taking before coming to federal court.  <u>See</u> <u>Murphy</u>, 402 F.3d at 348.  As stated above, this inquiry is not applicable to Easton's equal protection or due process claims.  <u>See</u> <u>supra</u> n.2.  However, it is required for Easton's takings claim, which is clearly pleaded in the Amended Complaint.  (Am. Compl. ¶ 62 ("SEVENTH: The defendant's actions prevent any reasonable or beneficial use of the plaintiffs' property and constitute a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments for as long as the moratoria are in effect.").

      "[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  <u>Williamson County</u>, 473 U.S. at 195.  Easton has failed to meet this burden here.

      "It is well-settled that New York State has a 'reasonable, certain and adequate provision for obtaining compensation.'"  <u>Country View Estates</u>, 452 F. Supp. 2d at 156 (quoting <u>R-Goshen, LLC</u>, 289 F. Supp. 2d at 449) (additional citation omitted).  First, the New York State Constitution specifically provides that "private property shall not be taken for public use without just compensation."  <u>Country View Estates</u>, 452 F. Supp. 2d at 156 (quoting N.Y. Const., art. I, § 7(a)).  Second, "New York State law recognizes that compensation for a de facto taking may be

demonstrated by a showing of 'legal interference with the physical use, possession or enjoyment with the owner's power of disposition of the property.'" Country View Estates, 452 F. Supp. 2d at 156 (quoting City of Buffalo v. J.W. Clement Co., 28 N.Y.2d 241 (1971)) (additional citations omitted).  Finally, the New York State takings clause may also be violated where "a local ordinance 'denies an owner economically viable use of his [or her or its] property or . . . does not substantially advance legitimate State interests.'" Country View Estates, 452 F. Supp. 2d at 156 (quoting Manocherian v. Lenox Hill Hosp., 84 N.Y.2d 385, 392 (1994)) (alteration in original). "While the typical taking occurs when the government acts to physically intrude upon private property, government regulations which limit owners' rights to possess, use or dispose of property may also amount to a 'taking' of the affected property."  Manocherian, 84 N.Y.2d 393 (citing cases).

Despite the foregoing provisions, Easton's Amended Complaint fails to allege any efforts to obtain just compensation in the courts of New York for the alleged taking of the Property.  As a result, Easton's takings claim is also not ripe for federal review under the test set forth in Williamson County.  See Country View Estates, 452 F. Supp. 2d at 157 (citing cases).


IV.    Facial Challenge to the Local Laws Enacting the Moratoria

Easton also alleges that in enacting the local laws that imposed the moratoria, the Village violated Easton's due process and equal protection rights and as such, the local laws are unconstitutional on their face.  The Village's stated purpose for the enactment of the moratoria was the need to review its master plan.

In the context of land use regulation, substantive due process "protects a person with an

-16-

interest in property from arbitrary or irrational governmental action depriving the person of that interest." Ecogen, 438 F. Supp. 2d at 156 (citing Brady v. Town of Colchester, 863 F.2d 205, 215 (2d Cir. 1988)) (additional citation omitted).  In order to prevail on its due process claim, Easton must demonstrate that the moratoria "bear[] no rational relationship to any legitimate governmental purpose." Ecogen, 438 F. Supp. 2d at 156 (citing cases).

In general, facial challenges to a legislative act are "difficult to mount successfully, and that holds true in the context of zoning and land use regulation as well." Ecogen, 438 F. Supp. 2d at 157.  A municipal zoning ordinance is generally "presumed to be valid, and will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective." Ecogen, 438 F. Supp. 2d at 157 (quoting Greene v. Town of Blooming Grove, 879 F.2d 1061, 1063 (2d Cir. 1989)) (additional citation omitted).  The Village's "subjective motivation in enacting the [m]oratori[a] is irrelevant." Ecogen, 438 F. Supp. 2d at 157 (citing cases).

"While the Court certainly may consider whether the [m]oratori[a] [are] rationally related to [their] stated purpose, . . . that is ultimately not determinative, and in fact it is not necessary for defendants to enunciate any purpose for the [m]oratori[a]." Ecogen, 438 F. Supp. 2d at 157 (citations omitted) (emphasis in original).  Rather, "the proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body." Id. (citation omitted) (emphasis in original).  Accordingly, plaintiff bears the "heavy burden" of "negat[ing] every conceivable basis which might support" the moratoria.[6] Id.

_____

[6] As the court in Ecogen, LLC v. Town of Italy, 438 F. Supp. 2d 149 (W.D.N.Y. 2006) noted, while a moratorium "is not, strictly speaking, a 'zoning' ordinance . . ., it is functionally similar" to one.  Id. at 158 n.5 (citation omitted).

at 158 (citing Heller v. Doe, 509 U.S. 312, 320 (1993)).

Applying the foregoing standards, plaintiff has failed to state a claim that the local laws enacting the moratoria are invalid on their face.  While Easton asserts that the stated purpose of the moratoria - to review the Village's master plan - is actually a pretext for the Village's real motivation and bad faith effort to devalue the Property, as stated above, the Village's subjective motivation in enacting the moratoria is irrelevant.  See Ecogen, 438 F. Supp. 2d at 157. Examining the moratoria on their face, it is impossible for the Court to find that they are so arbitrary or irrational as to violate Easton's due process and equal protection rights.

Based on the foregoing, plaintiff's Amended Complaint is dismissed in its entirety.


V.      Plaintiff's Motion for a Preliminary Injunction

As noted above, plaintiff moves for a preliminary injunction, enjoining the Village from enforcing the second moratorium and requiring the Village to immediately consider Easton's subdivision application.  However, by letter dated April 11, 2012, counsel for the Village advised the Court that at a public meeting held on April 10, 2012, the Board of Trustees adopted a resolution terminating the moratorium, effective immediately.  (Letter from Leventhal, S. to Boyle, M.J., dated Apr. 11, 2012, at 2.)  Accordingly, Easton's motion for a preliminary injunction is denied as moot.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the Amended Complaint is granted and this action is dismissed in its entirety.  Plaintiff's cross-motion for a preliminary injunction is denied as moot.  The Clerk of the Court is directed to enter judgment accordingly and to close this case.


**SO ORDERED:**

Dated: Central Islip, New York
          April 27, 2012

                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge

-19-