UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
EASTON LLC, doing business in New York as
SHILLELAGH HOLDINGS LLC,

                                      Plaintiff,              MEMORANDUM
                                                         OPINION AND ORDER

          -against-                                                      CV 11-4791 (ETB)

INC. VILLAGE OF MUTTONTOWN,

                                      Defendant.
-------------------------------------------------------------------------X

       Before the court is the plaintiff's motion for recusal, pursuant to 28 U.S.C. § 455(a). Defendant opposes plaintiff's application. For the following reasons, plaintiff's motion is denied.

FACTS

       Plaintiff, Easton LLC ("Easton"), is a family-held limited liability company that owns a 100-plus acre parcel of unsubdivided land (the "Property") in the defendant, the Incorporated Village of Muttontown's (the "Village"), three-acre residential zoning district. (Am. Compl. ¶ 17.) The family members who make up Easton no longer reside on the Property. (Id. ¶ 16.) Easton seeks to develop the Property into a large lot residential community composed of minimum three-acre residential lots under the Village's existing zoning regulations. (Id. ¶ 10.) Familiarity with the Memorandum Opinion and Order of the undersigned, dated April 27, 2012, as well as the summary order of the Court of Appeals, dated December 13, 2012, is presumed.

Easton commenced the within action on October 3, 2011 and amended its Complaint on December 18, 2011.  The Amended Complaint was for a declaratory judgment to redress the alleged violations of Easton's Fifth and Fourteenth Amendment rights.  Easton alleged that the reasons given by the Village for the moratoria were "patently false, irrelevant and fraudulent" and that the Village did nothing during the course of the two back-to-back moratoria to address the problems alleged by the Village as reasons for their imposition.  (Id. ¶¶ 11-12.)  The Amended Complaint alleged that the two moratoria, both on their face and as applied, violated Easton's due process and equal protection rights under the Fifth and Fourteenth Amendments because: (1) the only reason to impose the moratoria was to devalue private property so that the Village could acquire a parcel of land it was interested in for a lower price at a bankruptcy auction; (2) the moratoria constituted a deprivation of property and liberty without due process of law; (3) the moratoria constituted a deprivation of equal protection, as well as unlawful discrimination, because they affected only a handful of the more than 1,000 landowners in the Village; (4) the moratoria constituted an invalid exercise of police power by the Village; and (5) the moratoria constituted a taking of property without just compensation.  (Id. ¶ 62.)

While the within action was pending, however, the Village Trustees adopted a resolution at a public meeting held on April 10, 2012, terminating the moratorium giving rise to this action, effective immediately.  Accordingly, there is no longer any impediment to Easton submitting its subdivision application to the Village.

By Memorandum Opinion and Order dated April 27, 2012, the Court granted the Village's motion to dismiss for failure to state a federal claim and dismissed this action in its entirety.  Plaintiff appealed the Court's decision to the Second Circuit, which, on December 13,

2012, affirmed the dismissal of plaintiff's federal claims. The Circuit vacated the dismissal, however, with respect to plaintiff's state law claims and remanded the action for the sole purpose of further consideration of the state law claims.

After issuance of the mandate, the Court set a briefing schedule with respect to any motion to dismiss the state law claims. The plaintiff now moves for my recusal on a myriad of grounds, all of which are discussed infra.

## DISCUSSION

I.   Legal Standard

28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). It is well-established that a judge "has discretion to determine whether disqualification is warranted in a given matter." Leskinen v. Halsey, No. 12-cv-00623, 2013 U.S. Dist. LEXIS 31532, at *9 (E.D.N.Y. Mar. 5, 2013) (citing Sec. & Exch. Comm'n v. Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir. 1988)). "When determining whether recusal is appropriate, the trial judge must balance 'the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.'" Leskinen, 2013 U.S. Dist. LEXIS 31532, at *9-10 (quoting Drexel Burnham Lambert, 861 F.2d at 1312).

The ultimate inquiry under Section 455 is whether "a reasonable person, knowing all the facts, [would] conclude that the . . . judge's impartiality could reasonably be questioned." United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992). Disqualification is not required where a

case involves "remote, contingent, indirect or speculative interests." Id. Moreover, while "[l]itgants are entitled to an unbiased judge," they are not entitled to "a judge of their choosing." Drexel Burnham Lambert, 861 F.2d at 1312. "Where a litigant produce no evidence showing to the contrary, a judge's impartiality will be presumed." Leskinen, 2013 U.S. Dist. LEXIS 31532, at *10 (citing Wolfson v. Palmieri, 396 F.2d 121, 126 (2d Cir. 1968)).

II.       The Timeliness of the Motion

Although there is no express provision in 28 U.S.C. § 455 mandating that a party move for recusal in a timely fashion, this requirement has been effectively read into the statute. See In re IBM Corp., 618 F.2d 923, 932 (2d Cir. 1980). It is well-settled that a party seeking recusal must raise its claim at the "earliest possible moment after obtaining knowledge of facts demonstrating a basis for such a claim." Apple v. Jewish Hosp. and Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987). Untimeliness in seeking recusal may constitute the basis for finding an implied waiver of the right to seek it. See United States v. Bayless, 201 F.3d 116, 127 (2d Cir. 2000).

The decision whether to grant or deny a recusal motion is a matter confided to the court's discretion. See Apple, 829 F.2d at 333. A number of factors must be examined when assessing the timeliness of a motion for recusal, including "whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." Id. at 334.

There are two underlying concerns that prompt this rule of timeliness. First, judicial

resources should not be wasted. See id. A prompt application affords the judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate to take. See In re IBM Corp., 45 F.3d 641, 643 (2d Cir. 1995). Second, "a movant may not hold back and wait, hedging its bets against the eventual outcome." Apple, 829 F.2d at 334. A prompt application for recusal avoids the risk that the party is holding back its application as a "fall-back position" in the event there are adverse rulings on the pending matters. In re IBM, 45 F.3d at 643. This appears to be what happened here.

I have been assigned to this action since its commencement in 2011. The plaintiff and defendant consented to have this case transferred to me for all purposes in February 2012, see 28 U.S.C. § 636(c), six months prior to the dismissal of this action. At no time during the action did Easton raise any bias by me. Now, having lost the motion to dismiss, which was primarily affirmed on appeal, this appears to be the last desperate attempt of a losing litigant and its counsel.

Accordingly, the application for recusal, pursuant to 28 U.S.C. § 455(a), is denied for untimeliness.

III.   The Merits of the Motion

Easton advances numerous grounds for the instant motion, each of which is devoid of any merit.

   A.   Timeliness of the Oral Argument Held on April 23, 2012

Easton first argues that although it moved for a preliminary injunction by order to show cause on December 21, 2011, the Court delayed holding oral argument until April 23,

2012, even though "time was of the essence." (Pl. Mem. of Law 3.) While the dates cited by Easton are correct, Easton overlooks the procedural history of this action.

Easton commenced this litigation on October 3, 2011, at which time it was assigned to Judge Wexler, as the district judge, and myself, as the magistrate judge. Easton then filed its order to show cause on December 21, 2011, which was signed by Judge Wexler. Briefing on Easton's motion for a preliminary injunction was not completed until January 19, 2012, by which time a cross-motion to dismiss was also filed by the Village.

By Order dated February 16, 2012, Judge Wexler referred the motions for a preliminary injunction and to dismiss to the undersigned. One day later, the parties consented to have this action transferred to my jurisdiction for all purposes and the case was reassigned to the undersigned on February 23, 2012.

By letter dated April 11, 2012, the Village advised the Court that it had lifted the moratorium at issue in this action. Accordingly, Easton's request for a preliminary injunction became moot at that point. The Court held oral argument on April 23, 2012 with respect to all of the "pending motions;" however, the only motion still in issue at that point was the Village's motion to dismiss since the preliminary relief requested by Easton was moot in light of the Village's termination of the moratorium.

As set forth above, the motions for a preliminary injunction and to dismiss were under this Court's jurisdiction for approximately two months prior to oral argument. Easton's argument based on delay is baseless and devoid of any merit.

    B.    <u>The In-Chambers Discussion Prior to the April 23, 2012 Oral Argument</u>

Easton takes issue with the Court's offer prior to oral argument - in chambers and

off the record - to place this action on a suspension calendar to afford Easton time to file a subdivision application with the Village (the moratorium having been lifted), which would address the substantial ripeness issue which ultimately proved fatal to the plaintiff. It would also afford the parties the opportunity to proceed without the litigation costs and expense of this action. According to Easton, the Court "strongly suggest[ed]" that this action be administratively closed, "providing no explanation whatsoever as to the purpose of such request." (Pl. Mem. of Law 3.) This was presented to the parties as an option requiring joint consent. Easton's counsel immediately rejected the Court's offer and oral argument commenced. There was no coercion involved. Easton's counsel rejected the opportunity and oral argument then followed the brief in-chambers conference.

"No good deed goes unpunished." Although Easton now attempts to paint this offer as the Court trying to "strong arm" it into something Easton did not want to do, the day after oral argument was held, and apparently aware of the weaknesses in its case as a result of the oral argument, Easton's counsel wrote a letter to the Court "in response to Your Honor's very helpful suggestion that this case be placed on the suspense calender pending the continuing processing of [Easton's] subdivision application." (Letter from Stephen P. Conlon dated Apr. 24, 2012.) By that letter, Easton "accept[ed] [the Court's] suggestion and . . . move[d] that the matter be placed on the suspense calendar." (Id.)

By letter dated April 25, 2012, the Village declined to consent to the transfer to the suspension calendar. (Letter from Steven G. Leventhal dated Apr. 25, 2012.) Thereafter, by letter dated April 26, 2012, Easton sought a second time to have this action placed on the suspension calendar without the Village's consent. (Letter from Stephen P. Conlon dated Apr.

25, 2012.) No such relief was granted. The Court had informed the parties prior to oral argument, it would only consider administrative closure with the consent of both parties.

There is no basis for Easton's claim that the Court showed bias in offering to administratively close this action. Both sides, in the Court's view, stood to gain - ironically, perhaps the plaintiff more than the Village.

C. The Order of the Oral Argument and the Time Allotted Each Side

Easton's third ground for recusal is that, during the oral argument on April 23, 2012, the Court instructed the Village to make its opening argument first, rather than Easton, who, according to Easton, was "the primary movant," and that "[d]espite the complexity of the issues," the Court "allotted plaintiff . . . only 15 minutes to argue and 5 minutes in rebuttal."[1] (Pl. Mem. of Law 3.) What Easton conveniently overlooks, however, is that, although it made the initial motion for a preliminary injunction, the Village's termination of the moratorium prior to the oral argument rendered Easton's motion moot. Accordingly, the only motion at issue before the Court was the Village's motion to dismiss, which is why the Village was asked to proceed first during the argument.

Moreover, as the Village points out in its opposition, each side was given approximately fifteen minutes to argue and five minutes for rebuttal. (Def. Mem. of Law in Opp'n 4.) Easton attempts to make it seem as if the Village was given ample time to argue, while Easton's time was cut drastically short, when in fact, both sides were given equal time for argument and rebuttal. No favoritism was shown by the Court to either side. Nor was any bias. This ground is

---

[1] Unless changed during my seventeen-year tenure on the bench, this is approximately the time afforded generally for oral argument before the Supreme Court and the Second Circuit Court of Appeals.

devoid of any merit.

        D.      <u>My Prior Service as a Village Trustee</u>

Easton's next ground for recusal is that the undersigned failed to disclose until the time of oral argument that I previously served as a village trustee. According to Easton, since the within action is "essentially against village trustees," a reasonable person might question the impartiality of a former village trustee presiding over the case. (Pl. Mem. of Law 4.)

I served as village trustee in the Village of Old Field, in Suffolk County, in the 1990's. Upon appointment as a magistrate judge in 1995, I resigned that position. I never served as village trustee for the Village of Muttontown (in Nassau County), the defendant herein, nor did I have any dealings with the Village of Muttontown during my service as a village trustee. Contrary to Easton's naive assertion, the universe of village trustees on Long Island is not a small and cohesive group. There are currently ninety-six incorporated villages on Long Island; sixty-three in Nassau County and thirty-three in Suffolk. <u>See</u> [http://en.wikipedia.org/wiki/List_of_villages_in_New_York](http://en.wikipedia.org/wiki/List_of_villages_in_New_York) (last visited Mar. 13, 2013). Moreover, Easton has made absolutely no showing - other than sheer speculation - that my prior service as a village trustee impacted my decision-making in this action. As stated above, disqualification is not required where a case involves "remote, contingent, indirect or speculative interests." <u>Lovaglia</u>, 954 F.2d at 815.

        E.      <u>The Court's Conduct</u>

Easton also argues that the Court demonstrated bias by failing to mention either at oral argument or in its Memorandum Opinion and Order: (1) Easton's property rights; (2) the duration of the moratoria; and (3) Easton's "factual negation of each proffered reason for the

moratoria as well as any other conceivable legitimate purpose for them." (Pl. Mem. of Law 4.) Easton is simply incorrect.

Both Easton's property rights and the duration of the moratoria were discussed at length in the "Facts" section of the Court's Memorandum Opinion and Order dated April 27, 2012. (See Mem. Op. and Order 1-4.) In addition, Point IV of the Memorandum Opinion and Order is specifically titled "Facial Challenge to the Local Laws Enacting the Moratoria" and discusses, in detail, Easton's challenges to the Village's stated purposes for the moratoria. (See id. at 16-18.) Accordingly, this, too, is a baseless claim and is denied.

   F. Easton's State Law Claims

Easton's next basis for recusal is that the Court "failed . . . to respond to [its] state law claims either at oral argument or in its Memorandum Opinion . . . ." (Pl. Mem. of Law 5.) Regrettably, the Court did overlook discussion of Easton's state law claims when rendering its decision on the Village's motion to dismiss. This is why the Circuit remanded the action. However, the failure to address Easton's state law claims had nothing to do with bias. Raising this now as evidence of bias is frivolous.

Moreover, a review of Easton's Amended Complaint demonstrates that its state law claims are not separately parsed out but rather, are lumped together with its federal claims all in one paragraph of the Amended Complaint. (See Am. Compl. ¶ 62.) Nor does Easton's Amended Complaint specifically cite to any New York statute or provision of the New York Constitution claimed to be violated by the Village. (See id.) Instead, the only citations to law in the Amended Complaint are to the Fifth and Fourteenth Amendments to the United States Constitution. (See id.)

G.  My Reapppointment as a Magistrate Judge

Easton next argues that I should have recused myself from this action because the decision on the Village's motion to dismiss was rendered during the time that I was seeking reappointment as a magistrate judge.[2]  (Pl. Mem. of Law 5.)  Easton cites no law addressing this claim for recusal for an obvious reason.  Its assertion is frivolous.

According to plaintiff, recusal was warranted due to the "significant political overtones" of this action.[3]  (Id.)  If there are "significant political overtones," none are evident from the papers, none were called to the Court's attention and the Court is unaware of any.  Land use disputes, such as the instant case, are heard in the district court on a regular basis.  Moreover, even if this were the "significant" case that Easton makes it out to be, 28 U.S.C. Section 455 "is not intended to be 'used by judges to avoid sitting on difficult or controversial cases.'"  Bayless, 201 F.3d at 127 (citing H.R. Rep. No. 93-1453, at 5, reprinted in 1974 U.S.C.C.A.N. at 6355).

---

[2]  My second eight-year term expired on July 31, 2011.  The Memorandum Opinion and Order dismissing Easton's Amended Complaint is dated April 27, 2012.  Thus, Easton's counsel refers to my "recall" application, see 28 U.S.C. § 636(h), submitted to the Circuit council and granted on July 18, 2011.  See Order of Recall dated July 18, 2011 on behalf of the Judicial Council of the Second Circuit.

[3]  Easton goes on to state as follows:

> Indeed such a disinterested observer might reasonably conclude that such a judge was bias [sic] in favor of defendant Muttontown and against plaintiff Easton.  Even the Court of Appeals did not see the reasoning behind Magistrate Boyle's omission.

(Pl. Mem. of Law 5 (emphasis added.))  This last statement is puzzling.  Nothing in the Second Circuit opinion mentions my reappointment as a magistrate judge or otherwise addresses the propriety of my ruling on this action during the pendency of the recall application to the Circuit Council.

-11-

H.  Easton's Motion Papers

Easton's final ground for recusal is that "[a]n appearance exists that [the Court] did not even read plaintiff's [motion] papers before rendering a decision" on the Village's motion to dismiss. (Pl. Mem. of Law 5.) According to Easton, a footnote in the Court's decision wherein the Court stated that Easton failed to address the ripeness issue raised by the Village, demonstrates that the Court did not read Easton's motion papers because the point headings clearly address ripeness. (Id. at 5-6.)

The point heading in Easton's brief made reference to the ripeness issue. (Pl. Mem. of Law in Opp'n to Def. Cross Mot. for Dismissal 5). Nothing in the paragraphs that followed developed the point heading or contradicted the Village's arguments that Easton's federal claims were not ripe for adjudication. Thus, despite the point heading titled "Plaintiff's Claims are Ripe for Adjudication," the entire argument that followed focused on the facial invalidity of the moratoria. (Id. 5-8.) Contrary to Easton's speculation, the Court reviewed all of the motion papers prior to oral argument. As found in the Court's Memorandum Opinion and Order, and affirmed by the Court of Appeals, Easton's claims are not ripe for adjudication.

Based on the foregoing, this basis for recusal is denied.

CONCLUSION

For the foregoing reasons, plaintiff's motion for recusal is denied in its entirety.

**SO ORDERED:**

Dated: Central Islip, New York
March 15, 2013

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge